**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | |
|---|---|
| **HADEAR SANCHEZ,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | **CIVIL ACTION NO._____** |
| § | |
| **FCA US LLC,** § | |
| § | |
| **Defendant.** § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Hadear Sanchez, ("Plaintiff" or "Ms. Sanchez") Individually, files this Original Complaint against FCA US LLC ("FCA" or "Defendant") and would show the Court as follows:

### I.
### PARTIES

1.01   Plaintiff Hadear Sanchez is and was at all times relevant, a citizen and resident of San Antonio, Bexar County, Texas.

1.02   Defendant FCA US LLC is, and was at all times relevant, a Limited Liability Company organized under Delaware law and having its principal place of business in Michigan. FCA US LLC does not have any members that are citizens of the State of Texas.  Rather, FCA US LLC's sole member is FCA North America Holdings LLC, a Delaware Limited Liability Company with its principal place of business in Michigan. FCA North America Holdings LLC's sole member is FCA Holdco B.V. (Besloten Vennootschap), an unincorporated company organized under the laws of the Netherlands with its principal place of business in London, England.  FCA Holdco B.V. is one hundred percent owned by Stellantis N.V. (formerly known as Fiat Chrysler Automobiles N.V.), which is a publicly traded company incorporated under the laws of the

Netherlands with its principal place of business in the Netherlands. Under 28 U.S.C § 1332(c)(1), Stellantis N.V. is a citizen of the Netherlands, and thus, FCA US LLC, FCA North America Holdings LLC and FCA Holdco B.V. are also citizens of the Netherlands. As such, complete diversity of citizenship exists in this case. Defendant may be served with process by serving its registered agent for service, CT Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## II.
### JURISDICTION AND VENUE

2.01   Since complete diversity of citizenship exists between the Parties, and the matter in controversy exceeds the sum of seventy-five thousand dollars ($75,000), exclusive of interest and costs, this court has diversity jurisdiction under 28 U.S.C. 1332.

2.02   Venue is proper in the Western District of Texas, San Antonio Division, pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omission giving rise to the claim occurred in Bexar County, Texas which is in the Western District, San Antonio Division. Plaintiff would show that the incident at issue occurred in San Antonio, Bexar County, Texas.

## III.
### FACTS

3.01   This lawsuit arises out of an incident that occurred on or about April 25, 2021 in San Antonio, Texas and involves a 2016 Jeep Compass VIN: 1C4NJCEA2GD562622 ("the Vehicle"). The Vehicle was equipped with an Active Head Restraint ("AHR") system. This system is designed to restrain the passenger's head during a rear-end collision.

3.02   At the time of the incident, Plaintiff was seated in the front passenger seat of the Vehicle with the transmission in drive and the motor running, waiting at a red traffic signal. Suddenly and without warning the headrest behind Plaintiff's head spontaneously deployed

striking the rear of her head causing severe injuries. There was no rear-end collision or other impact precipitating the AHR deployment.

## IV.
## STRICT LIABILITY AND NEGLIGENCE CLAIMS AGAINST DEFENDANT FCA

4.01    The Vehicle at issue in this suit was designed, tested, manufactured, constructed, marketed, distributed, sold and/or placed into the stream of commerce by and through the agents and/or representatives of FCA.

4.02    FCA was regularly engaged in the business of supplying or placing products, like the Vehicle in question, in the stream of commerce for use by the consuming public, including Plaintiff.  Further, such conduct was solely for commercial purposes.

4.03    The Vehicle in question remained unchanged from the time it was originally manufactured, distributed and sold by FCA until it reached Plaintiff and ultimately led to her injuries.  Stated another way, the Vehicle in question was defective and in an unreasonably dangerous condition at all times until it ultimately caused the injuries and damages asserted herein.

4.04    At the time the Vehicle was placed into the stream of commerce, it was, or should have been, reasonably expected and foreseeable that the Vehicle would be used by persons such as Plaintiff in the manner and application in which it was being used at the time Decedent suffered her injuries.

4.05    There were no mandatory safety standards or regulations adopted and promulgated by the federal government or an agency of the federal government that were applicable to the Vehicle at the time of manufacture and that governed the product risk that allegedly caused harm. Alternatively, the design of the Vehicle did not comply with mandatory safety standards or regulations adopted by the federal government that were applicable to the vehicle model at the time of the manufacture and governed the risks that caused Plaintiff's injuries.  Again, in the

alternative, in the event that such standards were in effect, and they were complied with, they were nonetheless inadequate to protect the public from unreasonable risks of injury or danger, or the manufacturer, before or after marketing the Vehicle, withheld or misrepresented the information or material irrelevant to the federal governments or agencies determination of adequacy of the safety standards or regulations at issue in the action.

4.06    With respect to the design of the Vehicle, at the time it left the control of FCA, there were safer alternative designs.  Specifically, there were alternative designs that, in reasonably probability, would have prevented or significantly reduced the risk of injury to Plaintiff. Furthermore, such safer alternative designs were economically and technologically feasible at the time the product left the control of FCA by the application of existing or reasonably achievable scientific knowledge.

4.07    At the time the Vehicle left the control of FCA, it was defective and unreasonably dangerous in that it was not adequately designed, manufactured or marketed to minimize the risk of injury.  By way of example and without limitation, the product in question was unreasonably and dangerously defective in the following ways:

   a.   the AHR system was defectively designed because it deployed abruptly without any triggering event;

   b.   the AHR was defectively designed because it utilized inferior plastic materials that fail to prevent unintended deployment; and

   c.   the warnings and instructions for the Vehicle were inadequate.

4.08    The above unreasonably dangerous defects in the Vehicle in question were the proximate and producing cause of Plaintiff's injuries and damages.

4.09    Defendant FCA breached its duty of care and was thus negligent by:

   a.   designing and distributing the Jeep Compass model with a design standard that was intended to meet the minimum government regulations, instead of safely designing the vehicle to reasonably minimize injuries in foreseeable uses;

    b.    failing to adequately monitor the performance of Defendant's vehicles in the field to ensure that they were reasonably minimizing injuries in foreseeable uses;

    c.    failing to adequately test the Jeep Compass model to ensure that it would be reasonably safe in foreseeable uses;

    d.    failing to design the AHR system in the Jeep Compass model to prevent unintended deployment;

    e.    failing to design the AHR system in the Jeep Compass model to not deploy absent a rear-end collision;

    f.    failing to adequately test the AHR system for the Jeep Compass model to ensure that they would be reasonably safe in foreseeable uses;

    g.    failing to design the AHR system and seat in compliance with Federal Motor Vehicle Safety Standards; and

    h.    failing to recall, retrofit, or issue post-sale warnings after Defendant knew or should have known that the Jeep Compass model was defective and unreasonably dangerous.

## V.
### DAMAGES

5.01    As a direct and proximate result of Defendant's negligence, Plaintiff has suffered damages.

5.02    As a proximate result of the negligence of Defendant described above, Plaintiff is entitled to bring this cause of action for all damages suffered as a result of the injuries sustained in the incident made basis of this suit, including but not limited to:

    a.    Past and future medical expenses;

    b.    Past and future lost wages;

    c.    Past and future pain and suffering;

    d.    Past and future mental anguish;

    e.    Past and future disfigurement; and

    f.    Past and future impairment.

## VI.
## EXEMPLARY DAMAGES

6.01   Upon information and belief, there have been hundreds of complaints to the National Highway Traffic Safety Administration regarding this exact scenario happening to other unsuspecting drivers and passengers in vehicles going back to 2015. Furthermore, a certified class action lawsuit was filed against Defendant in 2018 in the Eastern District of California regarding the specific defect complained of herein. Defendant had ample notice that the AHR in its vehicles, including the subject vehicle are defective and dangerous products; yet, Defendant has undertaken no steps to protect the motor public, including Plaintiff from injuries resulting from the defective and dangerous AHR system in its vehicles.

6.02   Plaintiff alleges that each and every negligent act or omission of Defendant and its agents, as set forth above, when viewed objectively from the standpoint of policymakers, involved an extreme degree of risk, considering the probability and magnitude of the physical harm to others and that Defendant had actual subjective awareness of the risks involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of Plaintiff and other passengers like her and as such, such conduct amounts to gross negligence or malice, as those terms are defined by law, so as to give rise to an award of exemplary or punitive damages, for which Plaintiff now pleads against Defendant. Additionally, by reason of such conduct, Plaintiff is entitled to and therefore asserts a claim for punitive and exemplary damages in an amount sufficient to punish and deter Defendant, and other entities like it, from such conduct in the future.

## VII.
## PRE-JUDGMENT AND POST-JUDGMENT INTEREST

7.01   Plaintiff claims pre-judgment and post-judgment interest at the maximum rate allowed by law.

## VIII.

## JURY DEMAND

8.01    Plaintiff respectfully requests that the Court impanel a jury to decide all fact issues in this case.

WHEREFORE, PREMISES CONSIDERED, Plaintiff pray that Defendant be cited to appear and answer this Complaint and that upon final hearing, Plaintiff recover judgment against Defendant for her damages as they appear at trial hereof together with costs of court, pre-judgment and post-judgment interest, and for such general and equitable relief as Plaintiff may be entitled.

Respectfully Submitted,

*/s/ James L. Mitchell*
**JAMES L. MITCHELL**
State Bar No. 14214300
Jim@PayneMitchell.com
**ANDREW S. BULLARD**
State Bar No. 24104622
abullard@paynemitchell.com
**PAYNE MITCHELL RAMSEY LAW GROUP**
3500 Maple Avenue, Suite 1250
Dallas, Texas 75219
214/252-1888 Telephone
214/252-1889 Facsimile

ATTORNEYS FOR PLAINTIFF